UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. 17-40-CHB-CJS-1 |
| Plaintiff, | ) | Civil Case No. 20-238-CHB-CJS |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND** |
| MICHAEL TUTT, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Michael Tutt, *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (R. 688).  Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b).  *See also* Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636.").  For the reasons below, it will be recommended that Tutt's § 2255 motion **be denied**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2018, Tutt pleaded guilty to "conspiracy to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846."  (R. 421 at 1408, 1412).  As part of the Plea Agreement, Tutt admitted to the following facts:

(a) Beginning in or about November of 2016, and continuing through in or about July of 2017, in Laurel and Fayette Counties, both of which are located in the Eastern District of Kentucky, and elsewhere, the Defendant, Michael Tutt, conspired with others to illegally distribute methamphetamine, hereinafter referred to as "crystal meth."

(b) Specifically, during this timeframe, the Defendant was responsible for importing and distributing between 3 and 10 ounces of crystal meth per week, every week, for a period of at least 6 months. This crystal meth came from various sources

of supply, including regular sources based out of the Louisville, KY area, and another based out of the Atlanta, GA area. The most crystal meth the Defendant ever received at one time was 10 ounces. The Defendant sold this crystal meth to various mid- and street-level drug dealers, as well as drug users, for $200 per 1/8 of an ounce. More than 50 grams of actual methamphetamine was distributed by the Defendant during this timeframe.

(c) By engaging in this conduct, the Defendant had a criminal agreement with his suppliers, the mid- and street-level dealers, and others that assisted him in these distribution activities. Specifically, the Defendant had such an agreement with co-defendants Alfredo Martinez, aka "Freddie Luna," Lajoyia Whitney, Jaqueline M. Robinson, Brandon M. Rush, Ashley Evans, Abdul M. Wilkerson, and Rachell D. Peppers.

(*Id.* at Page ID 1409). Tutt also admitted that he had a prior federal felony conviction which qualified for enhanced sentencing, and he acknowledged that the mandatory statutory sentence he faced was twenty years to life imprisonment.[1] (*Id.* at 1409). The parties agreed to recommend to the Court that Tutt's offense qualified as a base level 38 offense under the Federal Sentencing Guidelines, with entitlement to a three-point reduction for accepting responsibility and timely agreeing to plead guilty. (*Id.* at 1410). Finally, Tutt agreed to waive his right to appeal and collaterally attack his guilty plea and conviction and agreed to waive his right to collaterally attack his sentence. (*Id.*). However, he retained the right to appeal his sentence and to raise claims of ineffective assistance of counsel on collateral attack. (*Id.*).

The Court held a rearraignment hearing during which Tutt testified that he understood the proceedings and was not under the influence of any drugs or medications. (R. 436 at 3860–63). Counsel confirmed that Tutt had been able to assist with his defense and that Tutt was not impaired or incompetent. (*Id.* at 3864). The Court therefore determined that Tutt was competent to enter a guilty plea. (*Id.*). The Court then reviewed what rights Tutt would be waiving with his guilty plea

---

[1] Approximately one month after Tutt entered into this Plea Agreement, Congress reduced the minimum sentence from twenty years to fifteen years. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5220–21 (2018).

and confirmed that Tutt was satisfied with counsel's representation. (*Id.* at 3864–69). The United States reviewed the charges and potential penalties, which included twenty years to life in prison, and Tutt confirmed that he understood. (*Id.* at 3870–71).

The Court reviewed the appeal rights Tutt was waiving, which he stated he understood. (*Id.* at 3877). The following colloquy then took place:

> THE COURT: Mr. Tutt, also your plea is what we call a nonbinding or a B plea. And that means if I do not accept the sentencing recommendations from the United States and your lawyer or if you get a sentence that is more than what you had anticipated, you would not have the right to withdraw your guilty plea. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right. Have you, Mr. Wiggington,[2] explained that to your client?
>
> MR. WIGGINGTON: Yes, Your Honor.
>
> THE COURT: All right. So essentially, what that means is no one can make a promise to you about what your sentence will be that binds the Court, not your lawyer and not the United States. Do you understand?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Do you have any additional questions about your plea agreement?
>
> THE DEFENDANT: No, Your Honor.

(*Id.* at 3878).

The United States explained to the Court that there was a supplement to the Plea Agreement regarding Tutt's cooperation with the United States in its investigation of the conspiracy and "other matters." (R. 707 at 3890). The Court advised Tutt that based on his cooperation, the United

---

[2]   On Tutt's § 2255 Motion form, he indicated that Mr. John Tennyson is the subject of his claims for ineffective assistance of counsel and that Mr. Tennyson represented him at arraignment, plea, and sentencing. (R. 688 at Page ID 3755). Mr. Wiggington was co-counsel for Tutt and represented him at the plea colloquy, but was not identified in the Motion.

States could, but was not obligated to, file a motion to reduce Tutt's sentence. (*Id.* at 3890–91). Tutt affirmed that he understood that it was solely within the purview of the United States to seek such a reduction. (*Id.* at 3891).

The Court explained how the sentencing guidelines work and what factors would be considered in imposing a sentence. (R. 706 at 3880–81). Again, Tutt stated that he understood. (*Id.* at 3882). Finally, the Court questioned the United States and Tutt about the acts to which he was pleading guilty.

> THE COURT: Okay. I'm now going to ask the United States to summarize the facts and the evidence that the United States would produce at trial on the charge against Mr. Tutt.
>
> MR. DOTSON: Yes, Your Honor, had this matter proceeded to trial, the United States would use the testimony of codefendants as well as the wire and electronic intercepts to establish that Mr. Tutt was traveling out of state, particularly to the Atlanta, Georgia area, where he was obtaining methamphetamine and marijuana, bringing it back into this district, where he would then distribute it to other street-level dealers and drug users.
>
> THE COURT: Okay. And this time was in or about November 2016 through July of 2017; is that correct?
>
> MR. DOTSON: That's correct, Your Honor.
>
> THE COURT: All right. And this was actual methamphetamine or what's called crystal meth, is that correct?
>
> MR. DOTSON: That is accurate, Judge.
>
> THE COURT: All right. Also, it looks like this was more than 50 grams of actual methamphetamine distributed by Mr. Tutt during this time frame; is that correct?
>
> MR. DOTSON: It is correct, Judge.
>
> THE COURT: All right. So, Mr. Tutt, did you hear the facts that Mr. Dotson outlined?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Have you read paragraph 3 in the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree with the facts contained in paragraph 3 of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And is it your admission that then between November 2016 and July 2017, in Laurel and Fayette Counties you were conspiring with others to distribute methamphetamine or actual crystal meth; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you also agree that you would be responsible for distributing and selling more than 50 grams of actual methamphetamine?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you also agree -- I believe you have -- you agree and acknowledge that you are eligible for an enhanced sentence for a qualifying prior felony drug conviction under 21 U.S.C. 851(a)(1)?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So tell me in your own words what it is that you did that makes you guilty of the charge that you are pleading guilty to?

THE DEFENDANT: I was getting meth from a supplier in Atlanta and bringing it to London and Louisville.

THE COURT: Okay. And you were distributing it to other sort of street level distributors –

THE DEFENDANT: Yeah.

THE COURT: -- or dealers, and that was crystal meth?

THE DEFENDANT: Ounce quantities.

THE COURT: Oh, I'm sorry.

THE DEFENDANT: Ounce quantities.

THE COURT: And that was crystal meth?

THE DEFENDANT: Yes, ma'am.

THE COURT: So is it your intent to plead guilty to Count 1 of the fourth superseding indictment because you are, in fact, guilty?

THE DEFENDANT: Yes, Your Honor.

(*Id.* at 3882–85). After finding that Tutt was competent to plead guilty and that he knowingly and voluntarily did so, the Court accepted Tutt's guilty plea. (*Id.* at 3886).

On December 3, 2019, the Court held a Sentencing Hearing. (R. 711). During the Hearing, the Court first confirmed that Tutt had reviewed the Presentence Investigation Report ("PSI Report"), had no questions or objections to the PSI Report, and was satisfied with the advice he had received from counsel. (*Id.* at 3902–05). The calculation in the PSI Report indicated a Base Offense Level of 38, with 2 points added because he fled from police when they attempted to arrest him, and 3 points deducted for his timely guilty plea and acceptance of responsibility, for a Total Offense Level of 37. (*Id.* at 3907–09). Based on his prior convictions, Tutt was found to be a Criminal History Category III which, when taken into consideration with his Total Offense Level, resulted in a Sentencing Guidelines recommendation of 262 to 327 months of imprisonment. (*Id.* at 3908). Neither party objected to the PSI Report's Sentencing Guidelines calculations. (*Id.* at 3910–11).

During a sealed bench conference, the Court stated that it was familiar with Tutt's case based on testimony presented during the trial of his co-defendants. (R. 712 at 3940). The United States noted it had requested a 30% downward reduction in Tutt's sentence based primarily on his cooperation. (*Id.* at 3941). The United States also noted that, as mentioned by Tutt's counsel in his Sentencing Memorandum, Tutt had been injured while in jail and that he and his family members had been threatened. (*Id.* at 3941). The Court stated that, taking into consideration Tutt's cooperation, his credibility, his injuries, and the threats against his family, he merited a greater

6

than 30% reduction in his sentence. (*Id.* at 3946–48). However, the Court stated that Tutt did not merit the 50% reduction sought by his counsel and compromised by reducing Tutt's Offense Level to 31 which, with his Criminal History Category III, resulted in a Sentencing Guidelines recommendation of 135 to 168 months of imprisonment. (*Id.* at 3947–49). The Court noted that this brought the recommended sentence below the statutory minimum and resulted in a 45% reduction in that recommended sentence. (*Id.*) When asked if he had any questions, Tutt said, "No. No. Your Honor." (*Id.* at 3949).

After ending the bench conference, the parties made their respective arguments regarding the appropriate sentence for Tutt. (R. 711 at 3911–15). Counsel for Tutt advocated for a sentence at the low end of the 135 to 168 range, and the United States argued for a sentence in the middle of that range. (*Id.*) The Court then gave permission for Tutt to make a statement. (*Id.* at 3920). Tutt apologized for his actions and stated:

> [W]hen I was first presented the opportunity, I told them I would do it for a month. At three and a half weeks, I was robbed at gunpoint. From there, things just got worse. I was robbed by every one of my clients. I couldn't get out of the situation. Even when I paid them, they would - - pay the Mexicans for something else, they would keep coming back with the same drug, and they did it three times. It was a nightmare. . . From month one, it was an absolute nightmare. And if you listen to my phone calls or listen to wiretaps, I'm sure Dotson will attest to it, I was not happy, and I couldn't escape from it. And I'm truly sorry, and there really is no excuse.

(*Id.*).

The Court then noted the factors set forth in 18 U.S.C. § 3553(a) as well as Tutt's family and work history, education, and age, and sentenced him to 142 months of imprisonment. (*Id.* at 3928). In doing so, the Court clarified it "did not go to the bottom of the guidelines because of the quantity of drugs and because of [Tutt's] previous federal sentence, but [] didn't go towards the high end because of [his] significant productive life." (*Id.* at 3929).

7

Following imposition of this sentence, Tutt undertook a campaign to contact his attorney regarding an alleged promise by the United States to seek a sentence reduction under Federal Rule of Criminal Procedure 35. (*See* R. 688-2 at 3766–95). Tutt enlisted his ex-wife and his parents in this campaign, and they corresponded via text message or email with counsel on Tutt's behalf.[3] (*Id.* at 3766–67, 3787). Counsel responded on several occasions, primarily via text message, saying that such a motion was contingent on "additional coop[eration]," that the motion had to be filed by the United States, that Tutt "hit the qualifications," and that the United States could not unreasonably refuse to file the motion. (*Id.* at 3768–69).

It appears that counsel then changed law firms and there was some breakdown in communication, with counsel stating he had provided requested documents and Tutt's parents and/or ex-wife stating that they had not received them. (*Id.* at 3772, 3773–80). Although the documents arrived, it appears that Tutt nonetheless filed a Bar Complaint regarding counsel's handling of his case.[4] (*Id.* at 3781, 3783–86, 3788). Eventually, Tutt sent the following letter directly to the Assistant United States Attorney:

> I am writing to you because my attorney has abandoned me in the middle of negotiating a Rule 35(b) motion from your office on my behalf. My attorney informed me that he was going to arrange for a percentage time-cut under Rule 35(b) for my interviews and substantial cooperation in the case of James Peters, and for my hearing loss I suffer from as a result of events of August 2018 at the

---

[3]    The documents in R. 688-2 consist mostly of screen shots of text messages. It is not wholly clear from the copies provided the dates the text messages were sent and/or received and who sent them.

[4]    The Tennessee Board of Professional Responsibility ("Tenn. BPR") closed Tutt's complaint file after the Tennessee Supreme Court adopted the Tenn. BPR's recommendation that John Tennyson be permanently disbarred for misappropriating client funds. *In re John Terence Tennyson*, No. M2022-00651-SC-BAR-BP (Tenn. June 2, 2022). After receiving information from the Tenn. BPR of their recommendation for Tennyson's disbarment, Tutt filed a Motion for Leave to Supplement his § 2255 Motion (R. 754). Tutt stated that the letter from the Tenn. BPR illustrated a pattern of behavior from his attorney that "fail[ed] to uphold the Court's stringent standards." (*Id.* at Page ID 4519). Tutt's procedural request to supplement his § 2255 Motion will be granted. However, the Court finds that this supplement is unnecessary and irrelevant to the Court's processing of Tutt's § 2255 Motion because Tutt's claims for ineffective assistance of counsel are unrelated to the reason Mr. Tennyson was disbarred in Tennessee (i.e., misappropriation of client funds).

Laurel County Detention Center (LCDC) for which my attorney said he was arranging for an additional one-year time-cut.

As I am sure you are aware, it is generally considered, in the Sixth Circuit, to be incumbent upon the U.S. Attorney's Office to file a Rule 35(b) motion seeking a sentence reduction when substantial assistance has been rendered.

At my initial medical examination at FCI Elkhorn in Dec. 2019 it was remarked in my medical records that there is significant scarring in my right ear. I sent copies of the relevant medical records to my attorney John Tennyson, but he never responded to me.

I would greatly appreciate your prompt response, or the response of the appropriate member of your office, within 28 days of your receipt of this letter.

(*Id.* at 3791–92). It appears that Tutt did not receive a response.

After no motion by the United States was forthcoming, Tutt filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (R. 688). In his Motion, supporting Memorandum, Reply, and supporting addenda,[5] Tutt raises four grounds for relief, one involving prosecutorial misconduct and three involving ineffective assistance of counsel. (*Id.* at 3749–51).

## II.    ANALYSIS

### A.    Legal Standard for a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude

---

[5]    Tutt filed supplemental letters with the Court (*see* R. 698, R. 729, R. 740, R. 742) that the Court construed as addenda to his original filing and his Reply to the United States' response. (R. 697, 746). On November 29, 2021, the Court ordered that no further filings related to the pending § 2255 Motion shall be filed without first filing a motion for leave from the Court. (R. 746). On May 13, 2022, Tutt filed such a motion for leave for permission to file supplemental information related to Mr. Tennyson's disbarment. (R. 754). *See supra* note 4. And on May 15, 2023, Tutt made a supplemental filing of information. (R. 778).

which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).   To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."  *Id.*  (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).   In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).

### B.    Claim for Prosecutorial Misconduct

Tutt first alleges that the United States committed "prosecutorial misconduct" by allegedly breaching an agreement to seek a 50% reduction in his sentence and reneging on its promise to file a Rule 35 Motion seeking an additional reduction in Tutt's sentence.  (R. 688-1 at 3762; R. 725 at 4007).  To be entitled to relief, a defendant must show that the United States failed to comply with a plea agreement and that failure to comply resulted in a compromise in "the fundamental fairness and integrity of the judicial proceeding[s]."  *United States v. Barnes*, 278 F.3d 644, 648 (6th Cir. 2002).  The Sixth Circuit has adopted a two-step approach to determine if the alleged misconduct violated a defendant's due process rights.  *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).  The first step is to evaluate whether the prosecutor's conduct was improper, and if so, the Court must apply the four-step analysis set forth in *United States v. Carroll* to determine if that impropriety violated the defendant's due process rights.  26 F.3d 1380, 1385 (6th Cir. 1994); *Macias*, 291 F.3d at 452.  However, if there was no impropriety, the analysis stops there.  *Id.*  Thus,

whether Tutt is alleging prosecutorial misconduct by breach of plea agreement, he must first establish that the United States acted improperly.

As an initial matter, Tutt's guilty plea precludes him from filing a claim for prosecutorial misconduct in the instant § 2255 Motion. Tutt retained the right to appeal his sentence but waived the right to collaterally attack it except for claims of ineffective assistance of counsel. (R. 421 at 3875). The Court confirmed that Tutt understood the rights he was waiving by pleading guilty and determined that Tutt's plea was knowing and voluntary. (R. 706 at 3869–73 and 3886). Thus, Tutt waived his right to bring an action collaterally attacking his sentence for a claim of prosecutorial misconduct.

Nor has Tutt raised in his Motion that his guilty plea was invalid. Tutt's plea agreement does not contain any promise by the United States to file a motion to reduce his sentence, either before or after sentencing. (R. 421). Even if Tutt did bring a claim that his guilty plea was invalid, the claim would have been waived by his failure to raise it on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (explaining the failure to challenge the validity of a guilty plea on direct appeal waives the claim for purposes of the collateral proceeding). *See also Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022). Prisoners can avoid this procedural default by offering cause and prejudice — a sufficient excuse for their failure to timely raise a claim and why they would be harmed if they could not belatedly assert it. *Wallace*, 43 F.4th at 602. Tutt has not pointed to any obstacles to his raising of the issue at sentencing or in a direct appeal; therefore, the claim should be considered waived.

As to the alleged promise to seek a 50% reduction in sentence, the United States arguably fulfilled that promise when it recommended a sentence that would have been 53% less than the maximum recommended sentence. During the Sentencing Hearing, the United States ultimately

recommended a sentence of 152 months of imprisonment. (R. 711 at 3914). That represents a 53.5% reduction from the Guidelines recommended maximum sentence of 327 months of imprisonment. Furthermore, the Court imposed a sentence of 142 months of imprisonment, which is a 57% reduction from the Guidelines recommended maximum sentence. The United States sought a greater than 50% reduction from the recommended maximum sentence, which Tutt ultimately received. Thus, Tutt has not demonstrated any misconduct by the United States, let alone that it acted in bad faith or was prejudiced against him. Without any justification as to why his plea agreement should not be considered valid, his claim for prosecutorial misconduct should be denied. To the extent that a reviewing court should conclude Tutt has demonstrated cause and prejudice to set aside his guilty plea, the denial of this claim is nonetheless justified for the following reasons.

First, when the United States has sole discretion to seek a sentence reduction, the Court reviews its refusal to do so for "unconstitutional motives." *United States v. Haynes*, 579 F. App'x 473, 476 (6th Cir. 2014). The United States never waived its discretion to seek a sentence reduction, and Tutt has not identified any unconstitutional motives on the part of the United States for its alleged failure to seek the 50% reduction or to file the disputed Rule 35 Motion. Therefore, this argument is unsupported.

Second, as to the Rule 35 Motion following his sentencing, entitlement to a sentence reduction is based on post-sentence assistance, not pre-sentence assistance. *United States v. Nunley*, 619 F. App'x 490, 494 (6th Cir. 2015) ("Rule 35(b) allows the government to move for a reduction in sentence based on the defendant's post-sentencing cooperation . . . ."). Therefore, Tutt had to provide post-sentencing assistance to obligate the United States to fulfill its alleged promise to file a Rule 35 Motion. Tutt has failed to establish what, if any, post-sentencing

assistance he provided. As a consequence, the United States was never bound by its alleged promise to file a Rule 35 Motion. *Haynes*, 579 F. App'x at 478 (finding that the government had sole discretion to withdraw a Rule 35 Motion where the defendant did not provide substantial assistance after sentencing). Failure to keep a promise it was never bound to keep cannot be considered improper conduct by the United States. Furthermore, failure to keep a promise the United States was not bound to keep cannot possibly have compromised "the fundamental fairness and integrity of the judicial proceedings." *Barnes*, 278 F.3d at 648. Because Tutt has failed to establish that the United States acted in bad faith or that he suffered any prejudice by the alleged misconduct of the United States, this ground for relief is without merit and should be denied.

### C.    Claims for Ineffective Assistance of Counsel

To be successful on his three claims of ineffective assistance of counsel, Tutt must allege that his counsel committed "error[s] of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488. Tutt must prove counsel's errors by a preponderance of evidence. *Pough,* 442 F. 3d at 964. When assessing an ineffective assistance of counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the [proceeding outcome] cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Id.*

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms

. . . considering all the circumstances." *Id*. at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Tutt appears to be arguing that counsel was ineffective: (1) because he advised Tutt to refrain from raising issues regarding the PSI Report during the Sentencing Hearing so as to preserve the possibility of getting post-sentencing relief under Rule 35; (2) because counsel failed to convince the United States to file a Rule 35 Motion; and (3) because counsel advised Tutt not to file a civil action for his injuries to assist in obtaining post-sentencing relief under Rule 35. Each ground will be addressed separately below.

### 1.    Advice to Remain Quiet During Sentencing Hearing

According to Tutt, counsel told him not to raise any issues regarding the PSI Report at the Sentencing Hearing, because doing so would jeopardize any chance the United States would file a Rule 35 Motion.  Tutt appears to argue that if he had challenged the contents of the PSI Report, the Court would have imposed a lesser sentence and/or the United States would have filed a Rule 35 Motion.

In his Memorandum in support of his § 2255 Motion, Tutt sets forth numerous alleged errors in the PSI Report most of which involve details of the conspiracy and involvement of co-defendants in that conspiracy.  (R. 688-1 at 3757–59).  For example, according to Tutt, the PSI Report misidentified the co-defendant who threatened harm to Tutt's daughter,  incorrectly stated that Tutt's girlfriend sold meth, misrepresented the amount of marijuana Tutt sold to a co-defendant, listed an undercover "cop/agent" as a supplier, and stated that he had "a bag with 20 lbs[.] of meth" but "16 lbs[.] of what was in that bag was weed."  (*Id.* at 3757–59).  To the extent his counsel advised Tutt to remain silent about alleged errors in the PSI Report, any argument that this amounted to ineffective assistance of counsel regarding Tutt's sentence is without merit for two reasons.

First, under *Strickland*, Tutt is required to show that any professionally deficient advice by counsel had a prejudicial impact.  466 U.S. at 692.  Tutt pleaded guilty to one count of conspiring to distribute 50 or more grams of methamphetamine, which resulted in a Base Offense Level of 38.  (PSI Report at 9, ¶ 34).  The Base Offense Level was increased by two points because Tutt fled from law enforcement and decreased by three points because Tutt accepted responsibility and timely pleaded guilty.  (*Id.* at ¶ 38; 10, ¶ 41).  The PSI Report also noted Tutt's prior criminal activity, which placed him in Criminal History Category III.  (*Id.* at 12, ¶ 54).  A Total Offense Level of 37 with a Criminal History Category III resulted in a recommended Sentencing Guidelines range of 262 to 327 months of imprisonment.  (*Id.* at 17, ¶ 80).  These calculations were based on facts that Tutt did not dispute.  They were not based on the allegedly incorrect details of Tutt's criminal conspiracy.  In discussing Tutt's potential sentence, the Court cited the undisputed facts as set forth in the PSI Report.  (R. 711 at 3907–09).  It did not cite any of the allegedly incorrect details of the conspiracy.  Furthermore, in ultimately imposing a sentence that

15

was more than 45% below the minimum recommended sentence,[6] the Court did not cite any of those details.  (R. 711 at 3946–49).  Thus, Tutt has failed to show that the allegedly incorrect details of the conspiracy had any prejudicial impact on his sentence or how correcting those details (assuming they should be corrected) would have altered his sentence.  Because counsel's advice to remain silent was not prejudicial, it cannot have been ineffective assistance.  *Strickland*, 466 U.S. at 686.

Second, judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  Two of the primary factors the Court relied on in imposing a sentence that was more than 45% below the minimum recommended sentence were his acceptance of responsibility and cooperation.  If Tutt had raised these alleged and essentially irrelevant errors, the Court may very well have questioned whether Tutt truly accepted responsibility for his actions and the extent of his cooperation.  Therefore, it cannot be said that counsel's advice to refrain from raising these alleged errors fell outside "the wide range of reasonable professional assistance."  *Id.*

Likewise, any argument that counsel's advice to remain silent amounted to ineffective assistance regarding a possible Rule 35 Motion is without merit for two reasons.  First, a Rule 35 Motion is based on a defendant's actions *after* sentencing, not what took place before sentencing.  Fed. R. Crim. P. 35(b)(1).  Thus, any errors contained in the PSI Report would have been irrelevant to Tutt's entitlement to a sentence reduction under Rule 35, and failure to raise issues regarding irrelevant errors about presentence conduct could not have been prejudicial.

Second, as Tutt admits, whether to file a Rule 35 Motion is solely at the discretion of the United States.  Tutt has failed to show how pointing out to the Court alleged presentence errors by

---

[6] The Sentencing Guidelines recommended sentence was 262 to 327 months of imprisonment.  The Court ultimately sentenced Tutt to 142 months, which is 45.8% of 262.

prosecutors and federal agents would have inclined the United States to favor him with a Rule 35 Motion, even if he qualified for one. Therefore, it cannot be said that any advice to remain silent was outside the range of reasonable professional assistance. *Strickland,* 466 U.S. at 689. For the foregoing reasons, this ground for relief has no merit.

### 2.      Failure to Obtain a Rule 35 Motion

Tutt's second claim for ineffective assistance of counsel alleges that his counsel failed to obtain a Rule 35 Motion from the United States. This claim fails for two reasons. First, Tutt states that "to [his] understanding, a Rule 35 [Motion] is for someone <u>not</u> included on my indictment," and that he agreed to testify against James Peters, who was not listed on his indictment. (R. 725 at 4008) (emphasis in original). That is a misunderstanding of Rule 35, which states: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, *after sentencing*, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1) (emphasis added).

Tutt provided a great deal of assistance to the United States before sentencing; however, he has not set forth what assistance he provided to the United States *after* sentencing. He refers to "substantial cooperation in the case of James Peters" (R. 688-2 at 3791), but he does not state when that cooperation took place, the nature of the cooperation, and whether that cooperation amounted to "substantial assistance." Furthermore, the United States noted in its Motion for Downward Departure and to Sentence Below the Statutory Minimum Sentence Based Upon Substantial Assistance (Motion for Downward Departure), that Tutt assisted regarding the prosecution of Mr. Peters. (R. 635 at 3253). Because the Motion was filed three weeks before Tutt was sentenced, it appears that Tutt's assistance took place before he was sentenced, not after. Therefore, Tutt has

failed to establish that he would even qualify if the United States filed a motion seeking a Rule 35 sentence reduction.

Second, the United States has the sole discretion to seek a Rule 35 sentence reduction. Tutt has not specified what, if anything, counsel could have or should have done to convince the United States to file a Rule 35 Motion. It is unclear how counsel's failure to take action, if he in fact failed to do so, resulted in any prejudice to Tutt. Therefore, this ground for relief has no merit.

### 3.    Advice Not to File Civil Suit

Tutt was attacked while incarcerated in the Laurel County Jail. (R. 725 at 4005). According to Tutt, he and counsel discussed filing a civil suit because the United States did not adequately protect him. (R. 688-1 at 3763). However, counsel advised Tutt to wait because the threat of a lawsuit could be used to convince the United States to reduce his sentence by "1-2 years" in exchange for foregoing any civil action. (*Id.*). The civil suit was not filed before sentencing and Tutt believes he was not given adequate credit for the injuries he suffered.[7]

Tutt's argument regarding this incident appears to be two-fold: 1) counsel was ineffective for failing to use the incident to get Tutt the credit he believes he was due; and 2) the United States told the Court that Tutt was not injured, thus denying him the credit he was due. (R. 725 at 4009). Neither of Tutt's arguments have any merit for the following reasons.

First, as Tutt acknowledged during his Rearraignment Hearing, the "Court had absolute control over his sentence, and the United States had no authority to increase or reduce [Tutt's] sentence or to bind the Court." (R. 436 at 3878). The most the United States could do was

---

[7]    Tutt eventually filed the civil suit on March 27, 2020, and the Court ruled for the defendants in that case. *See Tutt v. Cathers, et al.*, No. 6:20-cv-75-HRW, 2021 WL 518317 (E.D. Ky. Feb. 11, 2021).

recommend a sentence to the Court. Thus, Tutt's apparent belief that the United States could have reduced his sentence in exchange for foregoing a civil suit is factually incorrect.

Second, Tutt does not say what the United States told him the sentence would be before the "1-2 year" reduction or what it would have been after the "1-2 year" reduction. Therefore, the Court cannot tell how the sentence the United States recommended or the sentence the Court imposed differed from the sentence the United States allegedly promised.

Third, Tutt is correct that the United States did initially state in its Motion to Reduce Sentence by 30% that Tutt and his family had not suffered any injury; however, it corrected that misstatement during the Sentencing Hearing. (R. 712 at 3941–44). Once the Court determined the sentence range would be 135 to 168 months imprisonment, the United States changed its recommendation to a sentence of 152 months of imprisonment. (R. 711 at 3914). That recommended sentence was 28 months, or more than 2 years, less than the statutory minimum term of imprisonment of 180 months. Thus, it appears that the United States recommended a sentence reduction arguably greater than the "1-2 years" Tutt alleges he was promised.

Fourth, Tutt has not presented any evidence that counsel failed to leverage his injuries in exchange for the recommendation of a lighter sentence. In fact, after setting forth Tutt's injuries for the Court, the United States altered its sentencing recommendation, which was above the statutory minimum, to more than two years below that minimum.[8] Therefore, even if counsel failed to leverage the threat of a civil suit, it appears that Tutt received a better recommendation from the United States than the recommendation of the "1-2 year" reduction that Tutt sought.

---

[8]    A straight 30% reduction from the Sentencing Guidelines recommendation of 262 to 327 months of imprisonment would have resulted in a sentence of 183.4 to 228.9 months of imprisonment, both of which are above the statutory minimum of 180 months. Furthermore, as set forth above, the United States altered its sentencing recommendation from a 30% reduction to 152 months of imprisonment, which is a 53.5% reduction from the Guidelines recommended maximum and a 42% reduction from the Guidelines recommended minimum.

Finally, counsel recommended a 50% sentence reduction in his Presentence Memorandum and during the Sentencing Hearing, and he supported that recommendation, in part, with evidence of Tutt's injuries and of threats against Tutt's family members. (R. 712 at 3944–45). The Court stated that it would take the injuries and threats into account when sentencing Tutt. (*Id.* at 3947–49). While the Court did not reduce Tutt's sentence by the 50% that counsel requested, the Court did reduce Tutt's sentence by a little more than 45% of the recommended minimum sentence – 38 months, or more than 3 years, below the statutory minimum. (R. 711 at 3928). Thus, regardless of counsel's actions concerning a civil suit, he was able to obtain a greater than 3-year reduction in Tutt's sentence below the statutory minimum, and a greater than 45% reduction from the Sentencing Guidelines recommended minimum.

Based on the preceding, the United States recommended a sentence reduction that was in line with Tutt's requested 50% and 1-2 year reduction, and the Court's sentence contained an even greater reduction than what the United States proposed. Thus, Tutt has failed to establish that he suffered any prejudice because of the alleged failure by counsel to leverage the threat of a civil suit, and his argument to the contrary is without merit.

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district

20

court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Tutt's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the District Judge's entry of a final order in this matter.

## IV.    CONCLUSION, ORDER, and RECOMMENDATION

For the reasons stated above,

**IT IS ORDERED** that:

1)    Tutt's Motion for Leave to File Supplemental Information (R. 754) is hereby **granted;** and

2)    a recent check of the Bureau of Prisons Inmate Locator website reflecting that Tutt is currently incarcerated at FCI Thomson, the Clerk of Court is instructed to mail an additional copy of this Order and Report and Recommendation to Michael Tutt, Register No. 31842-074, at FCI Thomson, Federal Correctional Institution, P.O. Box 1002, Thomson, Illinois 61285.

Further, **IT IS RECOMMENDED** that:

1)      Tutt's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 688), **be denied;**

2)      a Certificate of Appealability **be denied** in conjunction with the District Judge's issuance of a final order denying Tutt's § 2255 Motion; and

3)      a Judgment in favor of the United States **be entered** in Tutt's ancillary action dismissing and striking the ancillary action from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 20th day of February, 2024.



Signed By:

*Candace J. Smith*

United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\17-40-CHB Tutt R&R final.docx

22