UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. 6:17-cr-40-CHB-CJS-1 |
| Plaintiff, | ) | Civil Case No. 6:20-cv-238-CHB-CJS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| MICHAEL TUTT, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Michael Tutt's § 2255 motion, [R. 688], the Magistrate Judge's Report and Recommendation regarding that motion, [R. 791], and Tutt's objections, [R. 798-2, pp. 13–28], as well as his Motion for Correction, [R. 793]. These matters are fully briefed and ripe for review. For the reasons discussed below, Tutt's Motion for Correction, [R. 793], will be denied; Tutt's objections, [R. 798-2, pp. 13–28], will be overruled; the Court will adopt the Report and Recommendation, [R. 791]; and the Court will deny the § 2255 motion, [R. 688].

## I.   BACKGROUND

### A.  Tutt's Criminal Case and Sentencing

A more complete statement of the facts underlying Tutt's § 2255 motion have been outlined in the Magistrate Judge's Report and Recommendation. *See* [R. 791]. From the best the Court can tell, Tutt does not challenge the Magistrate Judge's recitation of the facts. Thus, the Court will discuss here only the facts and procedural history relevant to the Motion for Correction.

On July 27, 2017, a federal grand jury returned an Indictment charging Tutt and other persons with various counts related to conspiracy to distribute methamphetamine and marijuana. *See* [R. 8]. The indictment also included a forfeiture allegation. *See id.* at 2–3. Eventually, a Fourth, and final, Superseding Indictment, [R. 334], was filed on September 26, 2018, charging Tutt with conspiracy to distribute 50 grams or more of methamphetamine and conspiracy to distribute 50 grams or more of marijuana. *See id.* The Fourth Superseding Indictment also contained a forfeiture allegation, which stated the intent of the United States to seek the forfeiture of proceeds in the amount of $5,000,000, "which sum represents the gross proceeds in aggregate obtained by the Defendant as the result of the violations alleged in this Indictment." *Id.* at 3–5.

On November 20, 2018, Tutt pleaded guilty to "conspiracy to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846." [R. 421 (Plea Agreement)]. As part of the Plea Agreement, Tutt agreed that he would "forfeit to the United States any and all interest in the property set forth in the criminal forfeiture allegation, and will execute any documents necessary for this forfeiture." *Id.* at 3–4. Additionally, Tutt agreed to waive his right to appeal and collaterally attack his guilty plea and conviction and agreed to waive his right to collaterally attack his sentence. *Id.* at 3. However, he retained the right to appeal his sentence and to raise claims of ineffective assistance of counsel on collateral attack. *Id.*

The Court held a rearraignment hearing during which Tutt testified that he understood the proceedings and was not under the influence of any drugs or medications. [R. 706, pp. 7:5–9, 8:9–11 (Rearraignment Transcript)]. Counsel confirmed that Tutt had been able to assist with his defense and that Tutt was not impaired or incompetent. *Id.* at 9:18–20. The Court therefore determined that Tutt was competent to enter a guilty plea. *Id.* The Court then reviewed what rights Tutt would be waiving with his guilty plea and confirmed that Tutt was satisfied with his counsel's

representation. *Id*. at 9:25, 10:1–25, 11:1–25, 12:1–4.  The United States reviewed the charges and potential penalties, which included a forfeiture allegation consisting of a money judgment.  *Id*. at 14:9–25, 15:1–6.

On January 28, 2019, following the United States' Motion for Entry of Judgment of Forfeiture, [R. 472], the Court entered a Judgment of Forfeiture stating that Tutt was subject to a forfeiture money judgment pursuant to 21 U.S.C. § 853 in the amount of  "$850,000.00, which sum represents the gross proceeds obtained by the defendant as result of trafficking methamphetamine and marijuana."  [R. 483, p. 1].  The Order also stated, "pursuant to Rule 32.2(b)(4), this Order of Forfeiture shall become final as to the defendant at the time of sentencing, and shall be made part of the sentence." *Id*.

On December 3, 2019, the Court held a Sentencing Hearing.  *See* [R. 711 (Sentencing Transcript)].  During the Hearing, the Court first confirmed that Tutt had reviewed the Presentence Investigation Report ("PSI Report"), had no questions or objections to the PSI Report, and was satisfied with the advice he had received from counsel.  *Id*. at 5:4–25, 6:1–10.  The PSI expressly referenced the Indictment's forfeiture allegation which included the money judgment: "The defendant agrees to forfeit all rights, title and interest in all assets, which are subject to forfeiture, as outlined in the written plea agreement and in the Forfeiture Allegation contained within the Indictment." *See* [PSI Report, p. 4]. Additionally, the following exchange took place during the hearing:

> THE COURT: …You have already forfeited interest in the property listed in the forfeiture allegation in the fourth superseding indictment, and I *believe a money judgment was previously entered as well*…. Are there any objections to this sentence that I just pronounced or special conditions imposed that have not been previously raised? Let me ask, first, Mr. Dotson.
>
> MR. DOTSON: No, Your Honor.

THE COURT: All right. Mr. Tennyson? If you need to take a moment, go ahead.

THE DEFENDANT: No objections.

MR. TENNYSON: No objections, Your Honor.

[R. 711, p. 43:3–21 (emphasis added)].

After the sentencing hearing, the Court entered its final Judgment, which expressly referenced the money judgment entered on January 27, 2019, [R. 483]. Specifically, the Judgment stated, "The defendant shall forfeit the defendant's interest in the following property to the United States: A Money Judgment was entered on January 28, 2019 [DE #483]." [R. 650, p. 7].

### B. Tutt's Pending Motions

Following his sentence, on December 7, 2020, Tutt moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, wherein Tutt raised four grounds for relief, one involving prosecutorial misconduct and three involving ineffective assistance of counsel.  [R. 688]. More specifically, he argues that the United States breached an agreement to seek a 50% reduction in his sentence and reneged on its promise to file a Rule 35 Motion seeking an additional reduction in Tutt's sentence, and his counsel was ineffective for advising him to remain silent at his sentencing hearing, failing to obtain a Rule 35 Motion, and advising him to not file a civil suit related to his injuries sustained while incarcerated. *See id.* The United States filed a response, [R. 717], and Tutt filed various replies and supplements, [R. 725 (Reply); R. 740 (Second Reply); R. 742 (Addendum to Second Reply); R. 778 (Supplemental Filing)].

Pursuant to local practice, Tutt's § 2255 motion was referred to the Magistrate Judge for consideration and preparation of a Report and Recommendation. *See* 28 U.S.C. § 636(b); Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636.").  On February 20, 2024, the

Magistrate Judge issued her Order and Report and Recommendation ("Report and Recommendation"), recommending Tutt's § 2255 motion be denied. [R. 791].

On February 27, 2024, Tutt filed a motion titled "Motion for Correction of Error Pursuant to Rule 52(B)" ("Motion for Correction"), [R. 793], in which he raised issues relating to the Judgment of Forfeiture entered against him on January 28, 2019. *See* [R. 483]. In his motion, Tutt argues that he "was denied due process of law by failure to provide notice, and failure to afford him an opportunity to be heard at a meaningful time, or in a meaningful manner in the prosecution of the for[e]closure allegation." [R. 793, p. 1]. Tutt argues that he was unaware of the forfeiture and money judgment entered against him, and that the amount of the money judgment was incorrect because he only pleaded to being responsible for 4.5 kilograms of methamphetamine, which could not produce proceeds of $850,000. *See* [R. 793].

In the handwritten memorandum attached to his motion, Tutt further asserts claims of prosecutorial misconduct and ineffective assistance of counsel. *See* [R. 793-1].[1] Tutt states that he learned of the forfeiture money judgment for the first time as he was going through his belongings years after his § 2255 motion was submitted. *Id.* at 1. He states he was unaware of the forfeiture allegation until this time, and that the forfeiture "was not mentioned to [m]e at my plea agreement or sentencing." *Id.* He states that he was only aware of a forfeiture allegation of five million dollars, but that he was told by his attorney, John Tennyson, that Mr. Tennyson had "squashed it." *Id*. at 1, 4. Tutt further asserts that the amount of the money judgment is incorrect and that the amount was exaggerated and misrepresented by the United States. *Id*. at 1–2. Tutt argues these assertions support claims of prosecutorial misconduct and ineffective assistance of counsel. *Id*.

---

[1] Because this document is addressed directly to the undersigned, it was filed in the record as a "Letter to Judge." However, the Court understands that this is Tutt's memorandum in support of his motion.

Tutt then proceeded to file various documents with the Court. On March 4, 2024, the Court received a letter from Tutt further addressing the arguments made in the Motion for Correction. [R. 795]. Next, on March 8, 2024, the Court received a filing from Tutt, which it construed as a motion seeking additional time to file objections to the Report and Recommendation. [R. 796]. The Court granted that motion. [R. 797]. Tutt then filed various documents on March 14, 2024, including a duplicate of his Motion for Correction, [R. 798], and the same exhibits that he previously attached to that motion, [R. 798-1, R. 798-2, pp. 1–11]. Also included in that filing are Tutt's objections to the Report and Recommendation, [R. 798-2, pp. 13–28].[2] On March 25, 2024, Tutt filed a "Special Demurrer on Service of Process and the Federal Rules of Criminal Procedure." [R. 799].[3]

The Court ordered the United States to respond to Tutt's Motion for Correction and the other related filings, and more specifically, the issues relating to the Judgment of Forfeiture. [R. 800]. The United States filed its response. [R. 802]. Meanwhile, Tutt filed another letter to the Court addressing issues related to his § 2255 motion and Judgment of Forfeiture. [R. 801].[4] Tutt then filed his reply to the United States' response. [R. 804].

The Court, upon reviewing these various filings and the record, ordered the United States to supplement its response with specific citations to the record and a detailed explanation as to how it had arrived at the $850,000 sum listed in its Motion for Entry of Judgment of Forfeiture,

---

[2] Presumably, the Clerk of Court filed these documents in the same order that they were mailed to the Court. As a result, the duplicate Motion for Correction was filed first, and the document is listed in the Court's electronic docketing system as a second Motion for Correction. *See* [R. 798]. However, the Court understands that this filing actually contains Tutt's objections to the Report and Recommendation, with a duplicate copy of his Motion for Correction attached as an exhibit. To the extent that Tutt *did* intend to file a second, identical Motion for Correction, the Court would deny it for the same reasons it denies his first Motion for Correction, [R. 793].

[3] This appears to be a complaint about the timeliness in which Tutt received copies of certain filings. *See* [R. 799].

[4] It appears the United States received and reviewed this letter prior to filing its response, as it mentions the letter in that response. [R. 802, p. 2].

[R. 472]. *See* [R. 806]. Before the United States filed the supplement, Tutt filed two documents with the Court, which appear to be supplements to his reply. *See* [R. 804 (Reply); R. 807 (Supplement to Reply); R. 808 (Second Supplement to Reply)]. The United States then filed its response, [R. 809], and certain documents in support of that response, [R. 811].

Approximately two weeks after these documents were filed by the United States, Tutt filed a letter with the Court, indicating that he had "just come off of lockdown" and had not yet received any mail. [R. 813]. The letter was unclear as to whether Tutt has received a copy of the United States' supplement to its response, [R. 809], but he stated that he has not yet received a copy of the United States' most recent sealed filings, [R. 810, R. 811]. The Court therefore directed the Clerk's Office to mail copies of those and other documents to Tutt and allowed Tutt another fourteen days to file a reply to the United States' supplement. [R. 814]. Tutt has since filed his reply, [R. 815], a letter styled as a "Second Response," [R. 816], and what appears to be a supplemental reply, [R. 817].

Accordingly, this matter is now before the Court on Tutt's § 2255 motion, [R. 688], the Magistrate Judge's Report and Recommendation regarding that motion, [R. 791], and Tutt's objections, [R. 798-2, pp. 13–28], as well as his Motion for Correction, [R. 793]. As detailed above, these matters have been thoroughly briefed and are ripe for review. For the reasons discussed below, Tutt's Motion for Correction, [R. 793], will be denied; Tutt's objections, [R. 798-2, pp. 13–28], will be overruled; the Court will adopt the Report and Recommendation, [R. 791]; and the Court will deny the § 2255 motion, [R. 688].

## II. ANALYSIS

### A.  Motion for Correction, [R. 793]

As noted above, Tutt cites to Federal Rule of Criminal Procedure 52 and argues that he was denied due process of law because he was unaware of the forfeiture order and was not afforded an opportunity to challenge the forfeiture amount, which he contends is incorrect. *See* [R. 793]. In the memorandum attached to his motion, Tutt further asserts claims of prosecutorial misconduct and ineffective assistance of counsel. *See* [R. 793-1]; *see also* [R. 816 (referencing prosecutorial misconduct and ineffective assistance of counsel)]. Based on these arguments, it is unclear whether Tutt's Motion for Correction is an attempt to amend his earlier § 2255 motion or to seek relief under Rule 52(b). Regardless, the motion is procedurally improper and otherwise fails on the merits, as addressed below.

### 1. If construed as a Motion to Amend his original § 2255 motion, Tutt's Motion for Correction is procedurally improper.

Tutt's Motion for Correction was received and filed by the Clerk of Court on February 27, 2024, and was postmarked on February 22, 2024, two days after the Magistrate Judge entered the Report and Recommendation recommending denial of his § 2255 Motion. *See* [R. 793; 791]. In *United States v. Clark*, the petitioner filed a motion to amend more than one month after the magistrate judge entered the report and recommendation. *See United States v. Clark*, No. 6:07-13-DCR, 2011 U.S. Dist. LEXIS 95034, at *2 (E.D. Ky. Aug. 23, 2011). The presiding district court judge declined to allow the defendant to amend her § 2255 motion, concluding that the defendant was not entitled to raise arguments to the district court that were not before the magistrate judge. *Id.* at *11-12. On appeal, the Sixth Circuit Court of Appeals agreed that, generally, defendants "may not raise new claims . . . in response to a magistrate judge's recommendation," but noted that courts should consider whether there is "a compelling justification for amending a § 2255 motion." *Clark v. United States*, 764 F.3d 653, 656 (6th Cir. 2014); *see also Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[A]bsent compelling

8

reasons, [a party may not] raise at the district court stage new arguments or issues that were not presented to the magistrate.").

Although it is not clear that Tutt filed his Motion for Correction *in response* to the Magistrate Judge's Report and Recommendation, he nonetheless has not set forth a compelling justification to amend his § 2255 motion after its entry.  Tutt argues that he was unaware of the forfeiture money judgment until after he filed his § 2255 motion; however, a review of the factual and procedural background of his case indicates otherwise.  As discussed above, Tutt agreed to the forfeiture in his plea agreement, the forfeiture was confirmed at his rearraignment, the Judgment of Forfeiture was entered into the record on January 28, 2019, the forfeiture was expressly referenced in his PSI and addressed at his sentencing, and Tutt's final Judgment expressly referenced the Final Judgment of Forfeiture which included the $850,000 money judgment.  *See* [R. 421 (Plea Agreement); R. 483 (Judgment of Forfeiture); R. 650, p. 7 (Final Judgment); R. 706, p. 15:2–4 (Rearraignment Transcript); R. 711, p. 43:3–21 (Sentencing Transcript); PSI, p. 4].  Because the record indicates that Tutt was aware of the forfeiture and money judgment when his § 2255 was initially filed, his purported lack of awareness is not a compelling justification to amend his § 2255 motion after the Magistrate Judge's Report and Recommendation has been entered.

Furthermore, assuming arguendo that Tutt was not aware of the forfeiture money judgment at the time he filed his initial § 2255 motion, he could have learned of the money judgment and filed a motion to amend at any point between its initial filing on December 7, 2020, and the entry of the Report and Recommendation on February 20, 2024, but because he failed to do so his newly proposed claims were not before the Magistrate Judge while she was still considering the matter, and are therefore, waived.  *See Marr v. Foy*, No. 1:07-cv-908, 2010 U.S. Dist. LEXIS 77925, at

*11–12 (W.D. Mich. Aug. 3, 2010) (citations omitted)); *Johnson v. Comm'r of Soc. Sec*., No. 20-11347, 2021 U.S. Dist. LEXIS 141522, at *7 (E.D. Mich. July 29, 2021) (explaining the "longstanding rule that issues not presented to the magistrate judge are deemed waived").

> **2. If construed as a Motion to Amend his original § 2255 motion, Tutt's Motion for Correction is untimely.**

A § 2255 motion is subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). Under § 2255(f), the one-year limitations period runs from the latest of four occurrences. *Id.* In the present case, the one-year statute of limitation runs from "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). "[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004). Pursuant to Federal Rule of Appellate Procedure 4(b)(1), the period for filing a notice of appeal is fourteen days after the entry of the judgment. Tutt's conviction became final on December 19, 2019—fourteen days after the December 5, 2019 judgment. [R. 650]. Therefore, his one-year limitations period expired on December 19, 2020.

However, "[a] motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15(a)." *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016). Under that rule, "[a]mendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'arose out of the conduct, transaction, or occurrence set out . . . in the original pleading.'" *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)). However, "[a] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired." *Id.* (quoting *United States v. Thomas,* 221 F.3d 430, 436 (3d Cir. 2000)) (internal quotation marks omitted). Thus, courts must "assess motions to amend [§ 2255 motions] for

10

whether they address the same 'common core of operative facts' as the initial petition." *Id.* (citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005)); *see also Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (explaining that "a Rule 15 motion will be denied where it is filed after [the statute of limitations] period expires unless the proposed amendment relates back to the date of the original pleading"). Accordingly, Tutt's Motion for Correction, if construed as a motion to amend, must be denied as untimely, "unless the proposed amendment relates back to the date of the original pleading," *Howard*, 533 F.3d at 475, meaning it addresses the same common core of operative facts raised in his initial motion. *Clark*, 637 F. App'x at 209; *see also Mayle*, 545 U.S. at 664 (2005).

Notably, the Supreme Court has flatly rejected prior circuit court decisions that permitted relation back "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," finding "if claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the Antiterrorism and Effective Death Penalty Act of 1996's] limitation period would have slim significance." *Mayle*, 545 U.S. at 656, 662. Instead, "[a] claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' will not . . . relate back." *Howard*, 533 F.3d at 476 (quoting *Mayle*, 545 U.S. at 650).

Tutt does not argue that the allegations in his Motion for Correction relate back to his § 2255 motion or that they are otherwise timely, and the Court finds that Tutt's proposed new claims regarding his forfeiture money judgment do *not* relate back to his initial § 2255 motion. In his Motion, Tutt argues that he did not receive notice of the forfeiture allegation and money judgement and did not have an opportunity to be heard in violation of his due process rights. *See* [R. 793]. In his attached memorandum, Tutt also argues both prosecutorial misconduct and

11

ineffective assistance of counsel related to his forfeiture money judgment.  *See* [R. 793-1].

Notably, Tutt does not discuss his forfeiture judgment at any point in his initial § 2255 motion, his

replies, or his supplement to his replies.  *See* [R. 688; R. 725; R. 740; R. 742; R. 778].

Related to the proposed due process and prosecutorial misconduct claims raised in the

Motion for Correction, Tutt argues that the United States did not include information about the

forfeiture in his plea agreement or at sentencing and that the United States inflated the proceeds

used to calculate his forfeiture money judgment. *See* [R. 793].  The common core of operative

facts for these claims is far different than the claims raised in his initial § 2255 motion, wherein

Tutt also argues that the United States committed prosecutorial misconduct in violation of his due

process rights.  *See* [R. 688].  In that initial motion, Tutt alleges that the United States breached an

agreement to seek a 50% reduction in his sentence and reneged on its promise to file a Rule 35

Motion seeking an additional reduction in Tutt's sentence. *See, e.g.*, [R. 688-1, p. 6; R. 725, p. 2].

These claims are unrelated to the claims Tutt now attempts to raise.  Because the common core of

operative facts in Tutt's new due process and prosecutorial misconduct claims are being raised for

the first time, they do not relate back to his initial § 2255 motion and are therefore untimely.

Regarding Tutt's proposed new ineffective assistance of counsel claim, Tutt argues that his

attorney assured him that there was no money judgment against him.  *See* [R. 793-1].  Again, the

common core of operative facts for this claim is far different than the ineffective assistance of

counsel claims raised in his initial § 2255 motion—i.e., that he was advised to remain silent at his

sentencing hearing, that his attorney failed to obtain a Rule 35 motion, and that his attorney advised

him to not file a civil suit related to his injuries sustained while incarcerated. *See, e.g.*, [R. 791,

pp. 10–20 (analyzing Tutt's claims)].  Notably, just because the amended § 2255 motion lists some

of the same types of legal claims asserted in the initial § 2255 motion—prosecutorial misconduct

12

and ineffective assistance of counsel—Tutt is not entitled to amend his § 2255 motion because the key consideration is not the legal bases for the claims but whether they share a common core of operative facts. *James v. United States*, No. 2:15-CR-25, 2019 WL 4122189, at *4 (E.D. Tenn. Aug. 29, 2019) ("True, the motion to vacate asserted claims of ineffective assistance of counsel. Nonetheless, the attorney misstep now alleged is not similar in type to the asserted attorney shortcomings presented in that pleading." (citations omitted)). Tutt's proposed new claim alleging that his attorney told him that he resolved the forfeiture money judgment is unrelated to the ineffective assistance of counsel claims raised in his initial § 2255 motion. As such, the new claim does not relate back and is therefore untimely.[5]

Furthermore, Tutt has not established that he is entitled to equitable tolling. The filing deadline for a § 2255 motion may be tolled if the petitioner shows that he "exercised reasonable diligence pursuing his claims," and that "some extraordinary circumstance prevented him from filing a timely petition." *Hansberry v. United States*, No. 22-1482, 2023 U.S. App. LEXIS 1278, 2023 WL 1432037, at *2 (6th Cir. Jan. 18, 2023) (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749–50 (6th Cir. 2011)). However, "[e]quitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the [movant] retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

Tutt does not directly address the timing issue of the claims contained in his motion to amend but does state that he was unaware of the forfeiture giving rise to the claims until he was

---

[5] In his Motion to Amend, Tutt includes a handwritten note in the margins, explaining that he has not been designated to a medical facility as the Court recommended, and requesting that he be designated to such a facility or released so he can obtain medical treatment. [R. 793, p. 3] To the extent that Tutt intended to amend his § 2255 motion to include these issues, the same analysis regarding amendment and relation back applies. To the extent that he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), he has not filed a proper motion requesting such relief.

going through his locker months after receiving a courtesy copy of his docket sheet.[6]  *See* [R. 793-1].  However, Tutt's assertion that he was unaware of the forfeiture allegation and money judgment is not enough to demonstrate an extraordinary circumstance, particularly when his assertion is unsupported by the record.[7]  *See Bryant-Branch v. United States*, No. 23-5125, 2023 U.S. App. LEXIS 14198, at *3 (6th Cir. June 7, 2023) (petitioner's inability to access certain court records and transcripts "does not establish that she was unaware of the facts underlying her claims"); *see also Slater v. United States*, No. 1:07cr155, 2021 U.S. Dist. LEXIS 90456, at *7–8 (S.D. Ohio May 12, 2021) (finding that petitioner's claim that he was unaware of his sentencing enhancement was unsupported by the record and otherwise did not entitle him to equitable tolling).

Moreover, even if Tutt demonstrated extraordinary circumstances, he has not shown that he has diligently pursued his rights.  To show due diligence, a movant must at least establish that he "took prompt action . . . as soon as he [was] in a position to realize that he [had] an interest in challenging his conviction."  *Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017) (quoting *Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011)) (internal quotation marks omitted).  Tutt states that he did not review his documents in his locker until "months" after receiving his docket sheet.  *See* [R. 793-1, p. 1].  Although Tutt may have only received an updated docket sheet as of May 2023, he undoubtedly had possession of his other documents, including his Judgment, for months or even years prior.  Thus, Tutt has also failed to show he exercised due diligence in pursuing his rights to warrant equitable tolling.

---

[6] The record indicates that the Clerk of Court sent Tutt a courtesy copy of his docket sheet on May 15, 2023 in response to his letter requesting an update on his § 2255 motion.  *See* [R. 777 (Letter from Tutt)]; *see also* Clerk's Virtual Notice, dated May 15, 2023.

[7] It is worth repeating that Tutt agreed to the forfeiture and money judgment in his plea agreement, the forfeiture allegation was confirmed at his rearraignment, the Forfeiture Judgment was entered into the record, the forfeiture and money judgement were addressed at his sentencing and referenced in his PSI, and it was expressly referenced in his final Judgment.  *See* [R. 421 (Plea Agreement); R. 483 (Judgment of Forfeiture); R. 650, p. 7 (Final Judgment); R. 706, p. 15:2–4 (Rearraignment Transcript); R. 711, p. 43:3–21 (Sentencing Transcript); PSR, p. 4].

Accordingly, whether viewed as a motion seeking to amend his original § 2255 petition, Tutt's Motion for Correction is untimely.

### 3. If construed as a motion seeking relief under Federal Rule of Criminal Procedure 52(b), Tutt's Motion for Correction is procedurally improper.

Federal Rule of Criminal Procedure 52(b) provides, in full, "A plain error that affects substantial rights may be considered even though it was not brought to the Court's attention." Fed. R. Crim P. 52(b). The United States argues that, to the extent Tutt seeks relief under this provision, the motion must be denied "because Rule 52(b) is not an avenue for relief at this stage." [R. 809, p. 2]. Indeed, the Supreme Court has explained that Rule 52(b) "was intended for use on direct appeal" and is therefore "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." *United States v. Frady*, 456 U.S. 152, 164 (1982). As a result, district courts within this circuit have denied motions seeking relief under Rule 52(b) under similar circumstances. *See United States v. Deuman*, 1:11:CR:266, 2017 WL 11497351, *1 (W.D. Mich. Sept. 13, 2017); *United States v. Woodruff*, 1:05-cr-109, 2008 WL 5094648, *3 (E.D. Tenn. Nov. 24, 2008).

Because Rule 52(b), the plain error rule, "is intended for use by federal courts on direct appeal, and it is not applicable in collateral post-conviction proceedings," *Frady*, 456 U.S. at 164, the Court finds that, to the extent Tutt seeks relief under this rule, his motion must be denied as procedurally improper.

### 4. Tutt's Motion for Correction fails on the merits.

Even if Tutt's Motion for Correction—whether viewed as a Motion to Amend his original § 2255 motion, or a motion seeking relief under Rule 52(b)—was procedurally proper, his claims would fail on the merits, for the reasons set forth below.[8]

### a.   Lack of Notice and Ineffective Assistance of Counsel

First, Tutt argues that he did not receive notice of the forfeiture.  Notably, Tutt did not raise this claim on appeal, and therefore the claim is procedurally defaulted.  *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013) ("Generally, when a defendant fails to raise an issue at sentencing or on direct appeal, that issue is waived").  It is "well-settled law" that a petitioner's failure to raise a claim at trial or on direct appeal results in a procedural default, or waiver, of the claim in a § 2255 proceeding, absent a showing of both cause and actual prejudice.  *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000) (citing *United States v. Frady*, 456 U.S. 152, 164-65, 167 (1982)).  In other words, to bring a procedurally defaulted claim, a petitioner must provide a "sufficient excuse for their failure to timely raise a claim" and explain "why they would be harmed if they could not belatedly assert it."  *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022).

Here, Tutt has not otherwise shown a sufficient excuse for his failure to timely raise his claim on appeal.  To the extent that Tutt argues that his lack of notice is sufficient cause, the record reflects that Tutt received notice of the forfeiture and money judgment.  [*See* R. 421; R.436; R. 483; R. 464; R. 650, p. 7; R. 706; R. 711; PSR, p. 4].  However, in his attached Memorandum, it appears that Tutt makes the argument that his lack of notice was at least in part due to ineffective assistance counsel.  [*See* R. 793-1].  An ineffective assistance of counsel claim can constitute "cause" for a procedural default.  *Wallace*, 43 F.4th at 602.

---

[8] Moreover, even if the Court broadly construed the motion as a *new* § 2255 motion, the Court notes that it would be a second or successive motion that must be certified for review by the Sixth Circuit under 28 U.S.C. § 2255(h). Even assuming Tutt could meet the standard for such certification, *see* § 2255(h)(1)–(2), his claims fail on the merits as discussed herein.

When assessing an ineffective assistance of counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To establish Tutt has been deprived of effective assistance, he must show that counsel's performance was both constitutionally deficient and prejudicial.  *Id*. at 687.

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances."  *Id*. at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.  The tactical decisions of a defendant's trial counsel are presumed to be part of sound trial strategy and therefore will not be subject to successful attack absent a defendant overcoming such presumption. *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *abrogated on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004).

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Thus, "[a]n error by counsel, even if professionally unreasonable,

17

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

To be successful on his ineffective assistance of counsel claims related to his forfeiture more specifically, Tutt must show that but for counsel's errors, there is a reasonable probability his sentence would have been different. *Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001); *Strickland*, 446 U.S. at 694. Although, the Sixth Circuit has found that a habeas petitioner challenging a monetary penalty does not meet the "in custody" requirement under § 2255, *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995), the Sixth Circuit has permitted such challenges when brought as ineffective assistance of counsel claims. *See Ball v. United States*, No. 18-1123, 2018 U.S. App. LEXIS 29946, at *3 (6th Cir. Oct. 23, 2018) (citing *Weinberger*, 268 F.3d at 357-58; *Ratliff v. United States*, 999 F.2d 1023, 1026-27 (6th Cir. 1993) (allowing petitioner to challenge a restitution order allegedly resulting from ineffective assistance of counsel in a § 2255 motion)); *see also Evers v. United States*, No. 13-2690, 2017 WL 1011499, at *12 (W.D. Tenn. Mar. 14, 2017) ("A claim of ineffective assistance of counsel as to a restitution challenge is cognizable in a § 2255 proceeding."); *Singh v. United* States, No. 1:08-CV-318, 2009 WL 1770656, at *3-4 (W.D. Mich. June 23, 2009).[9] Thus, Tutt's challenges to the forfeiture order and money judgment are cognizable under § 2255 because he alleges ineffective assistance of counsel.

Tutt has not adequately rebutted the "strong presumption" that his trial counsel followed the professional rules of conduct, including the duty to "keep the defendant informed of important developments in the course of prosecution," in this case, informing him of the forfeiture

---

[9] Unlike the Sixth Circuit, several other circuits have found that 28 U.S.C. § 2255 is not an appropriate mechanism for challenging orders for forfeiture (or other aspects of a sentence unrelated to imprisonment). *See, e.g., United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999) (holding that "[b]y its clear terms, § 2255 is applicable only to prisoners in custody claiming the right to be released"); *Balik v. United States*, 161 F.3d 1341 (11th Cir. 1998); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1994); *United States v. Segler*, 37 F. 3d 1131, 1136 (5th Cir. 1994).

allegations. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688-90). Furthermore, Tutt fails to adequately develop the legal or factual bases for the alleged ineffective assistance of counsel claim, merely stating that "I know the AUSA Dotson was trying to get 5 million dollars. My lawyer, John Tennyson, said he squashed it." [R. 793-1 p. 1]. Tutt appears to argue that he was told by his attorney that he would not be subject to a forfeiture and money judgment. However, as noted at various points above, Tutt was made aware that there was a forfeiture allegation and money judgment throughout his criminal proceedings. Despite stating otherwise, it is not clear how Tutt could be unaware of his money judgment or unaware of his attorney's decision not to object to the money judgment when the record reflects that Tutt was informed. Tutt cannot rely on his own self-supporting conclusory allegations to demonstrate that his counsel failed to keep him informed of the forfeiture and money judgment. Thus, Tutt has failed to demonstrate that his counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688.

Moreover, even if Tutt was able to establish that his counsel's representation did fall below an objective standard of reasonableness, he cannot show that he was prejudiced. Although the substance of his argument is lacking, if Tutt is also attempting to argue that his attorney should have objected to his forfeiture money judgment because the amount was incorrect, he has not established that had his attorney done so, the result of the proceeding would have been different. Under the applicable forfeiture law, 21 U.S.C.S. § 853(a):

> A defendant convicted of a drug violation shall forfeit to the United States: (1) any property constituting or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C.S. § 848, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of

19

his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

Federal Rule of Criminal Procedure 32.2 provides that "[a]s soon as practical after a verdict or finding of guilty . . . on any count in an indictment . . . regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.* The court makes its determination based on "evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). If the court finds that property is subject to forfeiture pursuant to 21 U.S.C. § 853, it "enter[s] a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(2)(A). The preliminary order of forfeiture becomes final as to the defendant at sentencing. Fed. R. Crim. P. 32.2(b)(4)(A). The government has the burden to prove by a preponderance of the evidence that the property has a "sufficient nexus" to the underlying offense and is therefore subject to forfeiture. *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012) (citing *United States v. Ferguson*, 385 F. App'x 518, 529 (6th Cir. 2010)).

In the underlying criminal proceeding, the above procedure was followed, the District Court found that the United States met its burden, and the forfeiture became final at sentencing. As stated, the court may use any evidence already in the record to conclude that the United States has met its burden, which would include the defendant's plea agreement. In Tutt's agreement, he admitted to the following facts:

Specifically, during this timeframe, the Defendant was responsible for importing and distributing between 3 and 10 ounces of crystal meth per week, every week, for a period of at least 6 months. This crystal meth came from various sources of

20

> supply, including regular sources based out of the Louisville, KY area, and another based out of the Atlanta, GA area. The most crystal meth the Defendant ever received at one time was 10 ounces. The Defendant sold this crystal meth to various mid- and street-level drug dealers, as well as drug users, for $200 per 1/8 of an ounce. More than 50 grams of actual methamphetamine was distributed by the Defendant during this timeframe.

[R. 421, ¶ 3]; *see also infra* Section II(4)(c) (discussing amounts of methamphetamine). Tutt further agreed that "[t]he Defendant will forfeit to the United States any and all interest in the property set forth in the criminal forfeiture allegation, and will execute any documents necessary for this forfeiture," and

> [a]fter pleading guilty, the Defendant will make a full and complete financial disclosure to the United States and will assist the United States in the gathering of all financial information. The Defendant will complete and sign a financial disclosure statement or affidavit, will sign financial releases prepared by the United States, and will submit to a deposition in aid of collection at times and places that the United States directs. The Defendant agrees that any unpaid penalty will be submitted to the United States Treasury for offset. Failure to do so could result in the United States voiding this plea agreement.

[R. 421, ¶¶ 7–8].

Tutt's only basis for challenging the money judgment is that he was only "responsible for 4.5 kilograms," however, as seen above, Tutt pleaded guilty to a conspiracy to distribute involving "50 grams *or more* of methamphetamine." [*See* R. 793 p. 4282; *see also* R. 421]. The Court determined that the money judgment reflected proceeds from Tutt's drug trafficking based on the complete record, including Tutt's plea agreement, and there is no indication that Tutt's sentencing as to the money judgment would have been different had his attorney objected.

### b.  Prosecutorial Misconduct

Even if Tutt is given leave to amend his § 2255 motion, his proposed new claim of prosecutorial misconduct set forth in the amended § 2255 motion also does not afford him relief. Although the Sixth Circuit has recognized that arguments related to forfeiture may be brought in

a § 2255 motion in connection to claims of ineffective assistance of counsel, there is no direct case law that states a similar argument can be made in a § 2255 motion within allegations of prosecutorial misconduct.  Thus, absent such authority, Tutt's claim of prosecutorial misconduct related to his forfeiture and money judgment is procedurally defaulted because Tutt failed to bring the argument on appeal and because Tutt has failed to demonstrate cause and prejudice to excuse the procedural default.  Assuming arguendo that such claims can be brought, Tutt's claims of prosecutorial misconduct would nevertheless fail on their merits.

The Sixth Circuit has adopted a two-step approach to determine if alleged prosecutorial misconduct violated a defendant's due process rights.  *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).  The first step is to evaluate whether the prosecutor's conduct was improper, and if so, the Court must apply the four-step analysis set forth in *United States v. Carroll* to determine if that impropriety violated the defendant's due process rights.  26 F.3d 1380, 1385 (6th Cir. 1994); *Macias*, 291 F.3d at 452.  However, if there was no impropriety, the analysis stops there.  *Macias*, 291 F.3d at 452.  Therefore, Tutt must first establish that the United States acted improperly.

As an initial matter, Tutt's guilty plea precludes him from filing a claim for prosecutorial misconduct in his § 2255 Motion. Tutt retained the right to appeal his sentence but waived the right to collaterally attack it except for claims of ineffective assistance of counsel.  [R. 421 ¶ 6]. The Court confirmed that Tutt understood the rights he was waiving by pleading guilty and determined that Tutt's plea was knowing and voluntary, and Tutt does not currently challenge his plea. [R. 706 pp. 3869–73; 3886].  Thus, Tutt waived his right to bring an action collaterally attacking his sentence within a claim of prosecutorial misconduct.

Furthermore, Tutt has not demonstrated that the United States failed to comply with the plea agreement or otherwise acted improperly.  Tutt argues that he was not told about the forfeiture

in his plea agreement or at sentencing and that the amount was inflated.  [*See* R. 793 p. 4282; *see also* R. 793-1 pp. 8285-86].  However, as discussed above, the forfeiture was outlined in Tutt's plea agreement[10] and reviewed at his rearraignment,[11] and he admitted in his plea agreement to specific facts related to the forfeiture allegation.  [R. 421 pp. ¶¶ 3; 7-8; R. 706 pp. 3870–71].  Additionally, the Court entered a Judgment of Forfeiture, which stated in part "that the defendant is subject to a forfeiture money judgment pursuant to 21 U.S.C. § 853" in the amount of $850,000.00, and his final Judgment expressly referenced the Judgment of Forfeiture.  [R. 483; R. 650, p. 7].  Notably, Tutt did not object to the Judgment of Forfeiture, which was entered almost a full year prior to his sentencing,[12] nor did he directly appeal his sentence, which included the forfeiture and money judgment.  [*See* R. 483; R. 646; R. 650, p. 7].  Tutt now attempts to raise these issues that were not properly raised on appeal under the guise of prosecutorial misconduct, but he has not identified how the United States acted improperly.  As outlined above, the United States properly followed the forfeiture procedure, and the Court concluded that the United States had met its burden in establishing a "sufficient nexus" between the property and the underlying offense.  *See Evers*, 669 F.3d at 660.  Tutt has failed to elaborate with sufficient facts to support his argument that the United States acted improperly.  Because Tutt has not established that the prosecutor's conduct was improper, it is unnecessary to apply the four-step analysis set forth in *United States v. Carroll*.  26 F.3d 1380, 1385 (6th Cir. 1994); *Macias*, 291 F.3d at 452.

---

[10] "The Defendant will forfeit to the United States any and all interest in the property set forth in the criminal forfeiture allegation, and will execute any documents necessary for this forfeiture."  [R. 421 ¶ 7].

[11] When asked by the Court to "explain the nature of the charge, potential penalties, and whether forfeiture and restitution are issues," AUSA, Dotson, replied in part, "There is a forfeiture allegation to which the defendant's pleading, which consists of a money judgment, and he would be liable for a portion of the money judgment that applies to him."  [R. 706 p. 3869–70].

[12] The Judgment of Forfeiture [R. 483] was entered January 28, 2019, and Tutt's sentencing did not take place until December 3, 2019 [R. 646].

### c. Evidence of Record

Lastly, the Court notes that the evidence of record supports the $850,000 forfeiture amount. On this issue, the Court ordered the United States to substantiate the $850,000 forfeiture amount. [R. 806]. The United States did so, *see* [R. 809]; *see also* [R. 809-1; R. 809-2; R. 809-3; R. 809-4 (Lab Reports)], and outlined the record support for the amount. The evidence supporting the amount includes, among other things, Tutt's trial testimony, *see, e.g.*, [R. 462, p. 4:14–25, 5:3–4], the testimony of Codefendant Whitney, *see, e.g., id.* 9:21–25, 10:1–10; [R. 463, p. 68:1–8], his plea agreement, [R. 421], and his proffer to the FBI, [R. 811-1]; *see also* [R. 464, p. 13:1–4 (testimony of FBI Special Agent Christopher Hubbuch)].

Accordingly, the Court finds that the evidence of record supports the $850,000 forfeiture amount. Having concluded that Tutt's Motion for Correction is procedurally improper, untimely, and otherwise fails on the merits, the Court will deny the motion. The Court next turns to Tutt's objections the Report and Recommendation. [R. 798-2, pp. 13–28 (Tutt's Objections)].

## B. Objections to the Report and Recommendation, [R. 798-2, pp. 13–28]

### 1. Legal Standard

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to submit findings of fact and recommendations on applications for post-trial relief made by individuals convicted of criminal offenses. Federal Rule of Civil Procedure 72(b)(2) gives a petitioner fourteen days after service to file objections to a Magistrate Judge's recommendations. This Court must make a *de novo* determination of dispositive matters to which specific objections are made. Fed. R. Civ. P. 72(b)(3); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997)

(citation omitted). Courts need not conduct *de novo* review of general objections that fail to identify specific factual or legal issues, because it duplicates the Magistrate Judge's efforts and wastes judicial economy. *Howard v. Sec. of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Moreover, "absent compelling reasons, [§ 636] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr*, 200 F.3d at 902 (citations omitted). Ultimately, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Courts construe *pro se* filings more leniently than those prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts do not have "an affirmative duty . . . to scrutinize *pro se* [pleadings] to determine whether there is a cause of action other than the one pleaded by the [*pro se* litigant] that is more advantageous to him." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Further, a *pro se* litigant must still comply with court rules and procedural requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Tobias v. State*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018).

### 2. Tutt's Objections

Tutt spends the majority of his objections arguing the same forfeiture-related arguments asserted in his now-denied Motion for Correction. *See* [R. 798-2, pp. 13, 15–17, 18–21]. The Court has already explained that the forfeiture issues were not raised in Tutt's § 2255 motion or in the successive pleadings relating to that motion. *See supra* Section II(A). Accordingly, those issues were not before the Magistrate Judge and were not considered in the Report and Recommendation. And while the Magistrate Judge Act, 28 U.S.C. § 631 et seq., allows a district court to review timely filed objections, "it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate," in the absence of "compelling reasons." *Murr*,

200 F.3d at 902 (citations omitted). "Hence, [Tutt's] failure to raise this claim before the magistrate constitutes waiver." *Id.*  As a result, the Court need not address the merits of the forfeiture issues, and those objections are overruled. Moreover, even if the forfeiture issue was properly before the Court, that claim would fail on the merits, as discussed above. *See supra* Section II(A)(4).

The Court now turns to Tutt's other objections. First, Tutt objects on the basis that his Motion to Amend, [R. 793], was not considered in the Report and Recommendation. [R. 798-2, p. 13]. Later, he cites to the Magistrate Judge's recommendation that "a Judgment in favor of the United States **be entered** in Tutt's ancillary action dismissing and striking the ancillary action from the active docket of this Court." *See* [R. 791, p. 22 (emphasis in original); R. 798-2, p. 18]. Tutt believes that the "ancillary action" refers to his Motion to Amend, [R. 793], and again objects on the basis that the motion was not considered. [R. 798-2, p. 18]. To be clear, however, the "ancillary action" referenced by the Magistrate Judge is the separate civil action, Case No. 20-238-CHB-CJS, that was opened upon the filing of Tutt's § 2255 motion. While all filings related to that motion are docketed in the criminal action (Case No. 6:18-cr-40-CHB-CJS-1), the civil action remains active on the Court's docket until the § 2255 motion is resolved. Because the Magistrate Judge recommended denying the § 2255 motion, she also recommended closing the civil action. Moreover, the Court again notes that the Motion to Amend was received by the Court *after* the Magistrate Judge issued her Report and Recommendation, thus explaining why no mention of it was made in the recommended disposition. And, of course, the Court has now addressed the Motion to Amend above. *See supra* Section II(A). Accordingly, the Court will overrule this objection.

Next, Tutt asserts that another document appearing on his docket sheet, R. 792, must be a motion to strike his Motion to Amend, and he complains that he never received a copy of the

26

motion to strike, nor was he given an opportunity to respond. [R. 798-2, p. 18]. However, the document at R. 792 is an order relating to Defendant Christian Omar Torres and has no bearing on Tutt's case or his pending motions. No motions to strike the Motion to Amend have been filed. The Court therefore overrules this objection.

Next, Tutt turns to the Magistrate Judge's recommendation regarding his complaints of ineffective assistance of counsel. [R. 798-2, p. 22]. He argues that his counsel "lost his comlaint (sic) with the Tennessee Bar Association" for ineffective assistance of counsel, and also argues that his counsel withheld files from Tutt, "failed to file a slam dunk lawsuit, lied repeatedly, and colluded with [the United States Attorney] to keep me in the dark with the $850,000 forfeiture." *Id.* Referring to the Report and Recommendation, he also argues that the Magistrate Judge "said that [his attorney] sent me my files and paperwork, but I filed a [Bar] complaint anyway. I never received any files from [the attorney]. I have the text messages to prove it on file with the court." *Id.*

Again, the forfeiture issue is not before this Court and otherwise fails on the merits. As for the other assertions made by Tutt, he has largely failed to explain and cite to specific portions of the recommended disposition that he deems problematic, and he seems to simply reargue the same arguments made to the Magistrate Judge. The Court need not conduct a de novo review of such general objections. *Howard*, 932 F.2d at 509; *Robert*, 507 F.3d at 994.

Moreover, it is clear that the Magistrate Judge considered and addressed these arguments. *See* [R. 791, pp. 8, 13–20]. For example, the Magistrate Judge explained that the Tennessee Board of Professional Responsibility complaints against Tutt's attorney were due to that attorney's misappropriation of client funds, an issue wholly unrelated to Tutt's claims for ineffective assistance of counsel. *Id.* at 8 n.4. Moreover, to the extent Tutt challenges the Magistrate Judge's

27

factual finding that his attorney provided him with files and paperwork, he does not explain how that finding had any bearing on the Magistrate Judge's conclusions about ineffective assistance of counsel. And it does not appear that the Magistrate Judge's analysis hinges on that fact, *see id.* at 8, nor does Tutt argue as much. The Court will therefore overrule these objections.

Lastly, Tutt addresses the Magistrate Judge's recommendation regarding his prosecutorial misconduct allegations. [R. 798-2, pp. 22–23]. He lists out several bullet points, many of which simply recite certain facts that Tutt presumably believes are relevant to this prosecutorial misconduct claims. *Id.* To the extent these facts and statements relate to the forfeiture issue, the Court again notes that those issues are not properly before the Court and otherwise fail on the merits. And many of the other factual assertions are just that—factual assertions lacking any specific objection to the Report and Recommendation. For example, he argues that the United States Attorney told his attorney that "he would give me 1–2 years off" his sentence if he did not file a civil lawsuit, and the United States Attorney told Tutt that he would get "[a] little bit" of time off his sentence if he testified against another individual. But other than simply reciting these factual assertions, Tutt fails to cite specific portions of the recommended disposition that he disagrees with, and even fails to make general objections relating to these factual assertions. Moreover, the Court notes that the Magistrate Judge thoroughly considered Tutt's arguments relating to prosecutorial misconduct and provided a detailed explanation of why those arguments failed. *See* [R. 791, pp. 10–13]. Again, many of Tutt's "objections" fail to address specific portions of that analysis, or otherwise identify specific factual or legal issues with that analysis. The Court need not conduct a de novo review of such "objections." *See generally Howard*, 932 F.2d at 509; *Robert*, 507 F.3d at 994.

Tutt does make another objection relating to his prosecutorial misconduct claims in which he cites to a specific portion of the Report and Recommendation. He states that the United States Attorney agreed to move for a 50% reduction of Tutt's sentence, but the prosecutor "state[d] he forgot" only a few days prior to Tutt's sentencing. [R. 798-2, p. 23]. He argues that the Magistrate Judge "excused [the prosecutor's] 'forgetfulness' fot (sic) the 50% reduction saying that [the sentencing judge] adjusted the sentence to 49%." *Id.* While Tutt does not seem to challenge the Magistrate Judge's calculations, he does argue that the 49% adjustment in his sentence "is not the point," and "[t]he government should make good on their promise," even if it only reduces his sentence by another two to three months. *Id.* But he fails to address the Magistrate Judge's ruling on this point—i.e., that the United States has sole discretion to seek a sentence reduction, and its refusal to seek a reduction must be reviewed for "unconstitutional motives." [R. 791, p. 12]. As the Magistrate Judge explained, the United States did not waive that discretion, and Tutt failed to identify any unconstitutional motives on the part of the United States. *Id.* Tutt does not specifically object to this analysis, nor does he offer any factual or legal arguments to challenge that analysis. Accordingly, the Court will overrule the objection on this point.

Moreover, it appears that Tutt's objection on this point is due at least in part to a misunderstanding of the recommended disposition. As the Magistrate Judge explained, Tutt was sentenced to 142 months, or 45.8% of the Sentencing Guidelines' *minimum* recommended sentence. *See, e.g.*, [R. 791, p. 16 n. 6]. However, the Magistrate Judge explained, the United States arguably fulfilled its promises, as it recommended a sentence 53% below the Guidelines' *maximum* recommended sentence, and the Court imposed a sentence 57% below that maximum recommended sentence. *Id.* at 11–12. Tutt does not address this distinction in his objections.

29

Having overruled each of Tutt's objections, the Court will adopt the Report and Recommendation and will deny Tutt's § 2255 motion.

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000), in which it addressed the issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.* at 478.

In this case, reasonable jurists would not debate the denial of Tutt's construed motion for leave to file an amended § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).

## IV.    CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Tutt's "Motion for Correction of Error Pursuant to Rule 52(B)," [**R. 793**], is **DENIED**.

2. To the extent Tutt intended to file a second "Motion for Correction of Error Pursuant to Rule 52(B)," *see* [**R. 798**], that motion is **DENIED**.

3. Tutt's objections, [**R. 798-2, pp. 13–28**], to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

4. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of this Court.

5. Tutt's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [**R. 688**], is **DENIED**.

6. The Court certifies that, for the reasons set forth herein, there would be no arguable merit for an appeal in this matter and therefore, a Certificate of Appealability is **DENIED**.

7. Civil Action No. No. 20-238-CHB-CJS is hereby **CLOSED** and **STRICKEN** from the Court's active docket.

8. A separate judgment shall follow.

Signed this 3rd day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY